Hillary Benham-Baker – CA State Bar No. 265019
Julia Love – CA State Bar No. 343657
BENHAM-BAKER LEGAL
935 Moraga Road, Suite 200
Lafayette, CA
Tel. (415) 373-5333
Fax (415) 373-5334
hillary@benhambaker.com
jlove@benhambaker.com

*Attorneys for Plaintiff Anne Mason*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNE MASON, | Case No.: _____ |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| APPLE MEDICAL PLAN. | |

ANNE MASON brings this action against Defendant APPLE MEDICAL PLAN, for denial of benefits under Apple Inc.'s health benefit plan administered by UnitedHealthcare Services, Inc.

## I.     JURISDICTION AND VENUE

1.     Ms. Mason brings this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA §§ 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331.

2.     Venue lies in the Northern District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Defendant Apple Medical Plan (the "Plan") was administered in this district. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## II.     PARTIES

3.     At all relevant times, Ms. Mason was a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan.

4.     Plaintiff resides in Palo Alto, California.

5.     At all relevant times, the Defendant Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), sponsored by Apple, Inc.

6.     Apple, Inc. is a publicly traded corporation with its principal place of business in Cupertino, California.  Apple is Ms. Mason's employer.

7.     Apple's health plan is self-funded.  Apple maintains the ultimate authority over the Plan and ultimate responsibility for decisions made under the Plan.

## III.     FACTS

8.     Defendant denied Ms. Mason's claim for coverage of emergency air transport in the amount of $58,860.00. Ms. Mason required emergency air transport to travel to the Mayo Clinic for emergency surgery, which she paid for out-of-pocket.

9. Ms. Mason had a traumatic right elbow fracture in which the bone was close to protruding through the skin. This injury was a limb-threatening, right-hand dominant injury, which also presented a serious risk of infection, which could be life-threatening. Ms. Mason has rheumatoid arthritis, an autoimmune disease that puts those suffering from it at high risk of infection, which can be life-threatening.

10. Ms. Mason's elbow required emergency reconstruction to save the use of her dominant arm.

11. On July 14, 2020, Ms. Mason traveled by air ambulance to the Mayo Clinic in Rochester, Minnesota. Mayo Clinic Medical Transport did not obtain pre-authorization for this service because the emergency request came through after 5:00 p.m., outside of UnitedHealthcare's business hours.

12. Ms. Mason's doctor ordered that she travel to the Mayo Clinic because she could not have the required emergency surgery at her closest quaternary hospital, Stanford Hospital in Palo Alto. A quaternary hospital was required for the surgery, and the record demonstrates that Stanford Hospital would have been unable to perform the surgery Ms. Mason needed for several more weeks.

13. Immediately upon arrival at the Mayo Clinic on July 14, 2020, orthopedic surgeons began pre-operative planning to ensure a successful reconstruction and conducted pre-operative testing for the highly complex surgical procedure.

14. On July 15, 2020, Ms. Mason underwent a successful revision of right total elbow arthroplasty with distal humeral allograft and triceps reconstruction. In lay terms, Ms. Mason's elbow bones were reconstructed, and her arm muscles were reattached to the elbow.

15. Following the July 15, 2020 surgery, Ms. Mason submitted a claim for the air ambulance reimbursement to the Plan. Defendant denied the claim due to the failure of the third-party provider to obtain pre-authorization and claiming, without support, that this was a non-emergent situation.

16. On December 9, 2020, Ms. Mason submitted a written statement appealing the decision. Ms. Mason's Request for Review explained why the surgery required for her arm was emergent, and the supporting documents from her doctors definitively supported this conclusion.

17. Defendant denied Ms. Mason's initial appeal in January 2021 and her second-level request for review on April 20, 2022. Ms. Mason requested an external medical review of the decision and this reviewer also upheld the denial on July 11, 2022.

18. Ms. Mason exhausted all of her administrative appeals of the Plan's denial of benefits.

19. The Plan covers medically necessary, pre-certified emergent and non-emergent transportation by a licensed ambulance service to and from a medical facility or doctor's office qualified to provide covered health services and to and from the patient's current residence/home.

20. The air ambulance transportation was emergent and medically necessary.

21. The Plan uses "a 'reasonable person' definition to determine whether a situation is an emergency. In other words, considering the facts and circumstances, a reasonable person would consider the situation an emergency." Apple Benefits Book, 47 (January 2021).

22. The Plan covers emergency air transportation "if ground transportation is not possible, or would put your life or health in serious jeopardy." Apple Benefits Book, 43 (January 2021).

23. As an immunocompromised person, Ms. Mason's life was at high risk twice over: from the risk of serious infection if the skin perforated and the possibility of contracting COVID-19. Ms. Mason's emergency air ambulance service should have been covered on this basis alone.

24. The air ambulance transportation was emergent, given the facts and circumstances of the situation.

25. Ms. Mason's surgeon, Dr. Mark Morrey, provided a letter supporting Ms. Mason's appeal and explained that the procedure was emergent and required a quaternary care center to perform this "very complex" surgery. Dr. Morrey explained, "[t]he patient required

rapid air medical transport secondary to a limb-threatening, right hand dominant injury requiring emergent surgical intervention unavailable locally." Specifically, "[t]he patient has a history of several complex right elbow surgical revisions at Mayo Clinic and would require **emergent** arthroplasty revision of elbow with allograft-prosthetic composite of humerus" (emphasis added).

26. The Plan required prior approval before transport for both emergency and non-emergency medical air transportation.

27. In Ms. Mason's case, pre-certification was impossible. Mayo Clinic Medical Transport ("MCMT") could not obtain pre-certification before Ms. Mason's emergency flight on July 14, 2020, because the emergency request came through at 5:53 pm PST, outside of UnitedHealthcare's business hours.

28. The regulations governing ERISA explain that claims procedures maintained by Plan Administrators must be reasonable: "Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations . . . ." 29 CFR § 2560.503–1(b).

29. Even if MCMT had been able to place a call in the hours before Ms. Mason flew to the Mayo Clinic to make a determination regarding pre-certification, UnitedHealthcare would have needed to 1) examine Ms. Mason's history and medical records and 2) obtain information about the type of pre-authorization requested. By its very nature, this process could not be completed in a single telephone call and is a "practice that unduly inhibits the initiation and processing of a claim" as described in 29 CFR § 2560.503–1(b)(3).

30. The Plan document notes, "Network providers are generally responsible for obtaining pre-certification before services are rendered."

31. Unfortunately, the air transport was apparently coded in error by the provider, MCMT, as "non-emergent" and treated as such by UnitedHealthcare, despite the clear record establishing that this was emergent. This administrative coding error was made unbeknownst to Ms. Mason at the time and entirely beyond Ms. Mason's control.

32. In his assessment denying Ms. Mason's second-level Request for Review, UnitedHealthcare employee Robert Furman, MD, disregarded Ms. Mason's doctors and misrepresented Ms. Mason's claim as an appeal for a "non-emergency air ambulance." Dr. Furman failed to acknowledge that the air ambulance was medically necessary because Ms. Mason required emergency surgery on her elbow. The only available quaternary facility was the Mayo Clinic in Rochester, Minnesota. The air ambulance was also medically necessary because Ms. Mason is an immunocompromised individual, making commercial air travel extremely dangerous to her health and life due to COVID-19, particularly given the timing in July 2020.

33. Dr. Furman also stated that the "local facility" (Stanford Medical Center) could perform the required surgery three weeks later and indicated that the Plan doesn't "cover treatment primarily for the convenience of the patient or provider." Ms. Mason's medical record conclusively establishes that Ms. Mason required *emergency* medically necessary surgery and did not travel by air ambulance for her "convenience."

34. In his simplistic analysis, Dr. Furman implied that Ms. Mason's injury was merely a broken bone, ignoring the fact that Ms. Mason's bone was about to perforate her skin, possibly leading to infection and loss of use of her dominant arm. It would be reckless, cruel, and unreasonable to expect that Ms. Mason should have to wait for the bone to perforate the skin before the surgery would be considered a medical emergency. Ms. Mason's doctors agreed.

35. Dr. Furman also concluded the air ambulance was not covered because Ms. Mason did not obtain pre-certification.

36. In her Request for Review, Ms. Mason established that the Plan's pre-certification requirement is unreasonable under the federal regulations because "such prior approval [was] impossible" to obtain and would have "seriously jeopardize[d] [her] life [and] health." *See* 29 CFR § 2560.503–1(b)(3).

37. UnitedHealthcare's July 11, 2022 denial of Ms. Mason's Request for External Review reflected an even more egregious disregard for the facts and the law. UnitedHealthcare's hired reviewer, Dr. Dan Kiss MD, bizarrely stated that that no medical records were provided in

Ms. Mason's request. Yet, on page 2 of Dr. Kiss's letter, he listed the medical records reviewed, including the "07/14/2020 Mark Morrey, MD - Operative Report."

38. In the denial letter, Dr. Kiss also stated, "While there are concerns listed regarding conversion to an open fracture there is no corroboration that this was the case nor that this transport was ordered by a physician." On page 2 of Dr. Kiss's letter, he listed "06/06/2022 - Appeal Letter" among the documents reviewed. This document included doctors' letters stating that this was an emergency and that emergency air transport was ordered by a physician.

39. Further, in Exhibit G of the – Request for Review" was a letter from Dr. Emilie Cheung which expressly "corroborates" the concern "regarding conversion to an open fracture" by stating, "Due to the fact that there were no surgical openings sooner than 3 weeks as a result of the pandemic, the acute nature of the fracture (with risk of skin perforation), and the complexity of the case, it was safest for the patient to travel by air ambulance to have surgery with Dr. Mark Morrey at the Mayo Clinic as soon as possible."

40. Exhibit H to the Request for Review was letter from Mayo Clinic Dr. Morrey, who performed the surgery and whose office arranged the transportation, demonstrating that a physician ordered the transport.

41. In the July 11, 2022 denial letter, Dr. Kiss speculated, "Additionally, it is not clear why facilities closer to Stanford could not have provided the needed services. There are multiple University and **<u>tertiary</u>** medical/surgical centers on the West coast that potentially could have been accessed by ground ambulance or for that matter by private auto" (emphasis added). This demonstrates Dr. Kiss's neglect in making this review as Dr. Morrey stated in his letter that, "A **<u>quaternary</u>** care center such as Stanford or Mayo Clinic was required for this highly uncommon and specialized surgery" (emphasis added). A tertiary medical or surgical center was not an appropriate medical facility for Ms. Mason's care. A quaternary care center was required for the emergency surgery and the local quaternary care center, Stanford Hospital, was unavailable on an emergency basis. Travel to the Mayo Clinic by air ambulance was the only option for Ms. Mason to receive proper emergency care.

42. UnitedHealthcare, Dr. Furman, and Dr. Kiss all based their denials of Ms. Mason's claim on speculation and inaccurate characterizations of the claim, ignoring the medical record and Plan provisions, and disregarding federal regulations.

## CLAIM FOR RELIEF

**Claim for Benefits Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)]**

43. Plaintiff incorporates Paragraphs 1 through 39 as though fully set forth herein.

44. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

45. At all relevant times, Plaintiff has been entitled to reimbursement of reimbursement of the emergent air ambulance cost.

46. The denial of Plaintiff's benefits violates the terms of the Plan and Plaintiff's rights thereunder.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

A. Declare that Plaintiff is entitled to reimbursement of the air ambulance cost required to travel to the Mayo Clinic under the terms of the Plan;

B. Order Defendant to pay the reimbursement costs of $58,860 for the air ambulance, plus interest;

C. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

D. Provide such other relief as the Court deems equitable and just.

Dated: February 14, 2023

BENHAM-BAKER LEGAL

By: _____
Hillary Benham-Baker
*Attorney for Plaintiffp*