Hillary Benham-Baker – CA State Bar No. 265019
Julia Love – CA State Bar No. 343657
BENHAM-BAKER LEGAL, PC
3650 Mt. Diablo Blvd., Suite 106
Lafayette, CA
Tel. (415) 373-5333
Fax (415) 373-5334
hillary@benhambaker.com
jlove@benhambaker.com

James P. Keenley (State Bar No. 253106)
BOLT KEENLEY KIM LLP
2855 Telegraph Ave., Suite 517
Berkeley, California 94705
Phone: (510) 225-0696
Fax: (510) 225-1095

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO / OAKLAND DIVISION**

| | |
|---|---|
| ANNE MASON, | Case No.: 3:23-cv-647-VC |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | |
| APPLE INC. HEALTH AND WELFARE BENEFIT PLAN; APPLE INC. BENEFITS ADMINISTRATIVE COMMITTEE; UNITEDHEALTHCARE INSURANCE COMPANY; and DANE STREET LLC. | |
| Defendant. | |

Plaintiff ANNE MASON brings this action against Defendant APPLE INC. HEALTH AND WELFARE BENEFIT PLAN for denial of benefits due under the terms of the plan and against Defendants APPLE INC. BENEFITS ADMINISTRATIVE COMMITTEE, UNITEDHEALTHCARE

INSURANCE COMPANY, and DANE STREET LLC for breach of fiduciary duty under the Employee Retirement Income Security Act.

## I. JURISDICTION AND VENUE

1. Ms. Mason brings this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA §§ 502 (e) and (f), 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331.

2. Venue lies in the Northern District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Defendant Apple Inc. Health and Welfare Benefit Plan (the "Plan") was administered in this district. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## II. PARTIES

3. At all relevant times, Ms. Mason was a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan.

4. Plaintiff resides in Palo Alto, California.

5. At all relevant times, the Defendant Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), sponsored by Apple, Inc.

6. Apple, Inc. is a publicly traded corporation with its principal place of business in Cupertino, California. Apple is Ms. Mason's employer.

7. Defendant Apple Inc. Benefits Administrative Committee (the "Committee") is the named "Plan Administrator" of the Plan within the meaning of 29 C.F.R. § 2510.3-16 and a fiduciary of the Plan within the meaning of 29 U.S.C. 1002(21)(A) in that it exercised discretionary authority or discretionary control respecting administration of the Plan.

8. Defendant Unitedhealthcare Insurance Company ("UHC") was appointed by the Committee to serve as the claims administrator for the Plan and was a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A) in that it exercised discretionary authority or discretionary control respecting administration of the Plan.

9.       Defendant Dane Street LLC was retained as the Plan's service provider for external reviews of denied medical claims. Dane Street's determinations that the Plan is required to cover a health care service are final and binding on the Plan, and Dane Street is the sole entity that communicated with Plaintiff regarding her request for external review, and thus Dane Street was a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A) when rendering a determination on external review and communicating that determination because it exercised discretionary authority or discretionary control respecting administration of the Plan.

### III.     FACTS

10.      Defendant UHC denied Ms. Mason's claim for coverage of emergency air transport services and reimbursement of out-of-pocket medical expenses incurred to obtain those services in the amount of $58,860.00. Ms. Mason required emergency air transport to travel to the Mayo Clinic for emergency surgery following a fracture of her right arm with multiple significant complications. She had to spread the cost of the air ambulance service over three credit cards in order to pay in advance to obtain medically necessary emergency medical care.

11.      Ms. Mason had a traumatic right elbow fracture in which the bone was close to protruding through the skin. This injury was a limb-threatening, right-hand dominant injury, which also presented a serious risk of infection, which could be life-threatening. The fracture occurred close to an existing elbow prosthesis, further heightening the infection risk. Ms. Mason has rheumatoid arthritis, an autoimmune disease that puts those suffering from it at high risk of infection, which can be life-threatening. To treat rheumatoid arthritis, Ms. Mason takes immune suppression medications, which further impede her immune system's ability to fight off infections.

12.      Ms. Mason's physicians examined Ms. Mason's injury and determined that it was medically necessary for Ms. Mason to undergo emergency reconstruction to save the use of her dominant arm and prevent further injury if the fracture were to perforate through the skin or cause damage to the tissues around an existing elbow prosthesis, both of which could seriously impair Ms. Mason's functioning and present the risk of life-threatening secondary infections.

13. Ms. Mason's physicians concluded that Ms. Mason should be transported by air ambulance to undergo an emergency reconstruction at the Mayo Clinic with specialist surgeons who had performed previous complex procedures on her elbow. Accordingly, on July 14, 2020, Ms. Mason traveled by air ambulance to the Mayo Clinic in Rochester, Minnesota.

14. Ms. Mason's doctor ordered that she travel to the Mayo Clinic because she could not have the required emergency surgery at her closest quaternary hospital, Stanford Hospital in Palo Alto, in a timely fashion. A quaternary hospital was required for the surgery, and the record demonstrates that Stanford Hospital would have been unable to perform the surgery Ms. Mason needed for several more weeks.

15. Immediately upon arrival at the Mayo Clinic on July 14, 2020, orthopedic surgeons began pre-operative planning to ensure a successful reconstruction and conducted pre-operative testing for the highly complex surgical procedure.

16. On July 15, 2020, Ms. Mason underwent a successful revision of right total elbow arthroplasty with distal humeral allograft and triceps reconstruction. In lay terms, Ms. Mason's elbow bones were reconstructed, and her arm muscles were reattached to the elbow.

17. Following the July 15, 2020 surgery, Ms. Mason submitted a claim for the air ambulance reimbursement to the Plan. Defendant UHC denied the claim due to the failure of the third-party provider to obtain pre-authorization and claiming, contrary to the conclusions of Ms. Mason's treating physicians at both Stanford and the Mayo Clinic, that Ms. Mason was not experiencing a medical emergency.

18. On December 9, 2020, Ms. Mason submitted a written statement appealing the decision. Ms. Mason's request for review explained why the surgery required for her arm was emergent, and provided supporting documents from her doctors that supported this conclusion.

19. Defendant UHC denied Ms. Mason's initial appeal by letter dated January 8, 2021. UHC's January 8, 2021 notice of adverse benefit determination on appeal did not contain any notice of a deadline on filing a legal action to recover benefits due under the terms of the Plan.

20. The terms of the Plan required Ms. Mason to submit a second-level request for review, which she did. Ms. Mason's second-level request for review was denied by letter dated April 20, 2022. The April 20, 2022 notice of adverse benefit determination on second-level review stated "Please be advised that you have exhausted all levels of appeal with UnitedHealthcare. There are no further steps available. However, you may be eligible to submit a request for external review following completion of the internal appeals process. Please refer to the External Appeal Rights section found at the end of this letter." Followed by "Please note that appeal deadlines have been extended until further notice due to COVID-19." The body of the April 20, 2022 letter did not include any notice of Ms. Mason's right to bring a civil action under ERISA, or any deadlines that would be applicable to filing a legal action to recover benefits due under the terms of the Plan.

21. Instead of including information about Ms. Mason's right to external review and right to bring a civil action under ERISA in the body of the April 20, 2022 letter, UHC included three extra sheets of paper with the April 20, 2022 letter, the last of which contained, in a hanging, heading-less paragraph, the following statement: "If you do not agree with the final decision, you have the right to bring a civil action under section 502(a) of ERISA (Employee Retirement Income Security Act of 1974), but you must do so within 180 days of the date you are notified of the final decision on your appeal (including decisions on external review, where applicable) or you will lose any rights to bring such action. Additionally, no lawsuit may be brought for any other reason unless you first complete all steps in the appeal process, except as permitted by law."

22. The statement made by UHC in the enclosure to the April 20, 2022 letter is a misstatement of the actual terms of the Plan, which do not impose a 180-day deadline on bringing a legal action following external review. The terms of the Plan also do not require a participant to exhaust external review prior to bringing a legal action, contrary to UHC's statement that a participant must complete "all steps in the appeal process" prior to filing suit.

23. Ms. Mason requested an external review of the decision. The Plan contracted with Dane Street to provide external reviews. Dane Street sent Ms. Mason a letter dated July 11, 2022 (postmarked July 12, 2022) rendering an adverse benefit determination on external review. This final denial letter

made no specific reference to the Plan's review procedures and the time limits applicable to such procedures. It merely provided: "For questions about your appeal rights, this notice, or for assistance, please contact the number for Customer Service, located on the back of your member card" and that "you may have other remedies available under State or Federal law, such as filing a lawsuit." The final denial on external review thus contained no notice of any contractual limitation on when a claimant could file a civil action seeking benefits due under the Plan.

24. Defendant Dane Street, in denying Ms. Mason's claim on external review, was communicating with Ms. Mason as a fiduciary of the Plan and was required to conduct those communications to a fiduciary standard of care. Dane Street breached its fiduciary duties to Ms. Mason in failing to disclose the Plan's deadline on her right to bring a lawsuit, which was highly material information to Ms. Mason's circumstances.

25. Defendants Committee and UHC, the Plan Administrator and Claims Administrator, respectively, had a fiduciary duty to ensure that Dane Street provided notices of adverse benefit determination on external review that notified plan participants of all plan terms material to the circumstances of their claim and that complied with the claims procedure regulations under ERISA, which required Dane Street to notify Ms. Mason of any Plan-based deadlines on her right to bring a civil action under ERISA following denial of her claim on external review. Defendants breached this duty by failing to adequately supervise Dane Street and by failing to correct Dane Street's oversight when Defendants became aware of Dane Street's communications.

26. Defendant UHC, the Claims Administrator, received notice of the adverse determination on review and thus knew that the notice of the adverse determination on external review did not contain any notice of any Plan-based deadlines on Ms. Mason's right to bring a civil action under ERISA following denial of her claim on external review, under these circumstances Defendant UHC had an independent duty to directly notify Ms. Mason of any Plan-based deadlines that applied to her right to bring civil action following the final denial of her claim on external review. UHC did not provide this information to Ms. Mason.

27. In addition to clearly and conspicuously notifying a claimant of any Plan-based deadlines that apply to the claimant's right to bring a legal action, Defendants UHC and Committee were under a duty to perform their fiduciary functions solely in the interest of the Plan's participants and beneficiaries, for the exclusive purpose of providing benefits to participants and the beneficiaries of the Plan, and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

28. It is a standard practice of plan administrators and insurance companies who administer benefit claims under ERISA plans to not merely inform participants of Plan-based deadlines on the right to file suit in the abstract, but to specifically inform participants of the exact date by which they must bring suit in order to preserve their rights in light of a Plan-based limitation on the right to bring suit. Defendants UHC and Committee did not make any effort to do this, this omission was a breach of Defendants' UHC and Committee duty to use the care, skill, prudence and diligence that prudent plan and claim administrators exercise when informing benefit plan participants of plan-based limitations on their right to bring a legal action.

29. During the course of the internal appeals process with UHC, UHC represented that the Plan terms were contained in a document called the Apple Benefits Book, which is the Summary Plan Description ("SPD") for the Plan, not the formal "Plan Document" that contains the actual governing Plan terms.

30. In response to her written request for all governing Plan documents, UHC provided Ms. Mason with a copy of the Apple Benefits Book effective January 1, 2021. UHC did not at any time provide the actual Plan Document, nor did any other Defendant or Apple, Inc., until after the commencement of this litigation.

31. The 2021 SPD that was provided to Ms. Mason contains a notice, on the third page of the document, entitled "IMPORTANT: TEMPORARY BENEFIT CHANGES DUE TO COVID-19." This document states, in relevant part, that due to the COVID-19 state of emergency "certain plan deadlines are temporarily extended. The applicable deadline is determined by disregarding the Outbreak

Period" that extended such deadlines until the "earlier of: (a) 1 year from the original deadline, or (b) the end of the Outbreak Period." Among the deadlines subject to the temporary extension are "The deadline for filing a claim or appeal under an Apple health, life, short or long term disability, severance plan and the Apple 401(k) Plan."

32. The 2021 SPD only explains that the Plan contains a 180-day time limit on the right to bring suit to challenge a denied benefit claim in the section of the document that describes the appeal procedures that apply to review of denied benefit claims. A reasonable Plan participant could conclude, based on the 2021 SPD's statement that all claim and appeal deadlines were temporarily extended during the COVID-19 outbreak period, combined with the fact that the 180-day deadline on filing suit is set forth in the claim and appeals procedure section of the SPD, that the temporary extension of deadlines applied to the 180-day time limit on the right to bring a legal action. Ms. Mason understood the 2021 SPD in this way.

33. Ms. Mason's understanding that the 180-day deadline on filing suit was subject to the temporary extension of claim and appeal deadlines was reinforced by communications from UHC, the claims administrator, that stated, without any reservation, all appeal deadlines were extended until further notice. The 180-day deadline is only set forth in the SPD's sections describing the plan's appeal procedures and thus a reasonable Plan participant could concluded, and Ms. Mason did conclude, that the 180-day deadline set forth in the SPD had been extended "until further notice."

34. The 2021 SPD also contains a section devoted to describing the Plan's external review procedures. That section states that "You also have the right to file a civil action under ERISA Section 502(a) upon completing the external review process." But contains no statement indicating that there is a 180-day deadline applicable to the right to bring suit following an adverse determination on external review.

35. Ms. Mason timely exhausted all of her administrative appeals of the Plan's denial of benefits.

36. Ms. Mason timely brought suit under ERISA § 502(a)(1)(B) to recover benefits due to her under the Plan on February 14, 2023.

37. The Plan covers medically necessary emergent and non-emergent transportation by a licensed ambulance service to and from a medical facility or doctor's office qualified to provide covered health services and to and from the patient's current residence/home.

38. Ms. Mason's air ambulance transport was a medically necessary service ordered by her treating physicians to treat a serious, life-threatening, medical emergency.

39. The Plan covers emergency air transportation "if ground transportation is not possible, or would put your life or health in serious jeopardy." Ground transportation from Ms. Mason's home in the Bay Area to Rochester, Minnesota is not a feasible method of transportation for addressing a medical emergency.

40. Ms. Mason's life and health was at high risk in her transport to the Mayo Clinic for emergency surgery on her arm in several respects: she was at imminent risk of her fractured bone perforating her skin (which would be an additional medical emergency that would require immediate intervention), and she had significant infection risk above and beyond most patients: risk of infection in the tissues surrounding her existing elbow prosthesis, risks posed by the immuno-suppressive medication she takes to treat her rheumatoid arthritis, the risk of infection if the fracture perforated the skin, and the increased possibility of contracting COVID-19 if she travelled via commercial air transport. For these reasons, it was necessary for Ms. Mason to be transported by air ambulance, with on-flight emergency medical personnel, instead of by commercial flight.

41. Ms. Mason's need for air ambulance transportation was an emergency, it was important for her life and the continued use of her limb that she obtain surgery from a qualified provider at a quaternary hospital as soon as possible and her treating physicians concluded that it was medically necessary for her to be transported by air ambulance to the Mayo clinic to have surgery with the same providers who had performed other complex surgical procedures on her right elbow in the past.

42. Ms. Mason's surgeon, Dr. Mark Morrey, provided a letter supporting Ms. Mason's appeal and explained that the procedure was emergent and required a quaternary care center to perform this "very complex" surgery. Dr. Morrey explained, "[t]he patient required rapid air medical transport secondary to a limb-threatening, right hand dominant injury requiring emergent surgical intervention

unavailable locally." Specifically, "[t]he patient has a history of several complex right elbow surgical revisions at Mayo Clinic and would require **emergent** arthroplasty revision of elbow with allograft-prosthetic composite of humerus" (emphasis added).

43. Ms. Mason's claim has been denied, in part, on the grounds that neither she nor her providers obtained pre-service authorization to travel by air ambulance to the Mayo Clinic. The requirement to submit certain claims "pre-service" is a procedural requirement, and the procedures for it, including the deadlines, are set forth in the SPD's claim and appeal procedures section.

44. At the time of Ms. Mason's emergency air medical transportation, the Internal Revenue Service and Employee Benefits Security Administration had in effect an order, Extension of Certain Timeframes for Employee Benefit Plans, Participants, and Beneficiaries Affected by the COVID-19 Outbreak, 85 Fed. Reg. 26351, which provided relief from deadlines for certain actions related to employee benefit plans (the "COVID Extension Order"). Under the COVID Extension Order, all claim and appeal procedures applicable to claims for benefits under ERISA governed plans were paused for a period of one year from when the claim otherwise would have had to be submitted or 60 days following the expiration of the outbreak period. The outbreak period did not end until April 10, 2023.

45. The requirement to file a claim for benefits prior to the underlying service being rendered is a claim filing deadline subject to the COVID Extension Order.

46. Ms. Mason's claim for reimbursement of air ambulance services was filed within one year of the deadline to seek pre-service authorization of the claim, and therefore was timely under the COVID Extension Order and it was unlawful for Defendants to deny Ms. Mason's claim based on the failure to seek timely pre-service authorization.

47. Even absent the relief provided by the COVID Extension Order, in Ms. Mason's case her claim for benefits cannot be denied for failure to obtain pre-service authorization because it also was not possible for Ms. Mason to obtain pre-service authorization of the air ambulance transport. Pre-service authorizations, particularly for emergencies, are normally obtained by providers of medical services, not the patients who are undergoing the emergency. Mayo Clinic Medical Transport ("MCMT") the provider of the air ambulance service did not obtain pre-certification before Ms. Mason's emergency

flight on July 14, 2020, because the emergency request came through at 5:53 pm PST, which MCMT staff understood to be outside of UnitedHealthcare's business hours. Ms. Mason was not aware that MCMT had not obtained pre-service authorization until after she had already paid for the service, nor was she in a position to deal with this problem before undergoing emergency reconstructive surgery to prevent a broken bone from perforating her skin in light of that ongoing medical emergency.

48. The regulations governing ERISA explain that claims procedures maintained by Plan Administrators must be reasonable: "Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations . . . ." 29 C.F.R. § 2560.503–1(b). The regulations specifically prohibit any claims practices that "unduly inhibit the initiation and processing of a claim." 29 C.F.R. § 2560.503-1(b)(3).

49. Any claims procedure requiring a patient experiencing a medical emergency to obtain pre-service authorization for emergency medical transport specifically ordered by the patient's physicians is an unlawful inhibition on the initiation and processing of a claim and void under the governing regulations. Thus, in addition to Ms. Mason's claim being timely under the COVID Extension Order, Defendants' insistence that Ms. Mason request pre-service authorization for coverage of the emergency air transport is a violation of the claims procedure regulations and is not a valid basis to reject her claim.

50. As a direct and proximate result of the wrongful denial of her claim for benefits and Defendants' breaches of fiduciary duty, Ms. Mason has incurred substantial out of pocket expenses to obtain health care services that should have been covered by the Plan.

## FIRST CLAIM FOR RELIEF

**[Claim for Benefits Against Defendant PLAN Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)]**

51. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

52. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan, and/or to clarify her rights to future benefits under the terms of a plan.

53. At all relevant times, Plaintiff has been entitled to reimbursement of all or part of the air ambulance costs she incurred in July 2020.

54. The denial of Plaintiff's claim for benefits violates the terms of the Plan and Plaintiff's rights thereunder.

55. The denial of Plaintiff's claim for benefits has caused Plaintiff to incur out of pocket medical costs that she should not have had to incur and to incur attorney's fees and costs of suit in order to protect her rights under the Plan

## ALTERNATIVE SECOND CLAIM FOR RELIEF

**[Breach of Fiduciary Duty Against Defendant Apple Inc. Benefits Administration Committee Pursuant to ERISA § 502(a)(3)(B)(i), 29 U.S.C. § 1132(a)(3)(B)(i)]**

56. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

57. Plaintiff contends that the Plan's SPD does not contain any language notifying a participant that there is a 180-day deadline to file suit following determination on external review and/or that any such limitations contained in the Plan were extended pursuant to the SPD's notice of temporary extension of deadlines and that Plaintiff's claim for benefits under section 502(a)(1)(B) is therefore timely. In the alternative, Plaintiff contends that Defendant Committee breached fiduciary duties owed to Plaintiff, causing her to file her complaint after the 180-day deadline had expired, thereby causing her actual harm in the form of being unable to challenge the denial of her claim for reimbursement emergent air transport services in court.

58. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan.

59. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent

person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

60. ERISA's fiduciary duties include a duty of honesty and candor, which requires fiduciaries to communicate honestly, clearly, and accurately with participants and beneficiaries.

61. ERISA § 503(a)(3), 29 U.S.C. § 1132(a)(3) empowers this Court to grant appropriate equitable relief to redress any violations of ERISA or to enforce any provisions of ERISA.

62. Defendant Committee breached its fiduciary duties to Plaintiff by: (1) failing to ensure that the claims administrator and the third-party retained for providing external reviews provided clear and accurate information about the Plan's deadline for bringing a legal action following adverse benefit determinations; and (2) failing to provide clear and accurate notice of the exact date by which the Committee believed Plaintiff needed to bring a civil action to challenge the adverse benefit determination; and (3) failing to provide a Summary Plan Description that contained a clear and accurate description of the Plan's deadline for bringing a legal action following adverse benefit determinations.

63. Wherefore, Plaintiff prays for appropriate equitable relief, including but not limited to equitable tolling of the Plan's 180-day deadline that was omitted from its final determination letter in violation of the regulations applicable to the Plan and/or equitable surcharge in the form of make-whole monetary relief to compensate her for her lost ability to bring a legal action against the Plan.

## ALTERNATIVE THIRD CLAIM FOR RELIEF

**[Breach of Fiduciary Duty Against Defendant Unitedhealthcare Insurance Company Pursuant to ERISA § 502(a)(3)(B)(i), 29 U.S.C. § 1132(a)(3)(B)(i)]**

64. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

65. Plaintiff contends that the Plan's SPD does not contain any language notifying a participant that there is a 180-day deadline to file suit following determination on external review and/or that any such limitations contained in the Plan were extended pursuant to the SPD's notice of temporary extension of deadlines and that Plaintiff's claim for benefits under section 502(a)(1)(B) is therefore timely. In the alternative, Plaintiff contends that Defendant UHC breached fiduciary duties owed to Plaintiff, causing her to file her complaint after the 180-day deadline had expired, thereby causing her

actual harm in the form of being unable to challenge the denial of her claim for reimbursement emergent air transport services in court.

66. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan.

67. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

68. ERISA's fiduciary duties include a duty of honesty and candor, which requires fiduciaries to communicate honestly, clearly, and accurately with participants and beneficiaries.

69. ERISA § 503(a)(3), 29 U.S.C. § 1132(a)(3) empowers this Court to grant appropriate equitable relief to redress any violations of ERISA or to enforce any provisions of ERISA.

70. Defendant UHC breached its fiduciary duties to Plaintiff by: (1) failing to ensure that Dane Street, the third-party retained for providing external reviews provided clear and accurate information about the Plan's deadline for bringing a legal action following adverse benefit determinations; (2) failing to provide clear and accurate notice of the exact date by which the UHC believed Plaintiff needed to bring a civil action to challenge the adverse benefit determination; (3) failing to clearly and accurately describe the Plan's limitation on the right to bring a civil action in the April 20, 2022 adverse benefit determination on appeal; (4) failing to clearly and accurate describe the Plan's limitation on the right to bring a civil action in the January 6, 2022 adverse benefit determination on appeal; and (5) failing to inform Plaintiff that the Plan had a deadline applicable to bringing a civil action after the determination of Plaintiff's claim on external review despite having knowledge that this information was not included in the final denial of Plaintiff's claim on external review.

71. Wherefore, Plaintiff prays for appropriate equitable relief, including but not limited to equitable surcharge in the form of make-whole monetary relief to compensate her for her lost ability to bring a legal action against the Plan.

## ALTERNATIVE FOURTH CLAIM FOR RELIEF

### [Breach of Fiduciary Duty Against Defendant Dane Street LLC Pursuant to ERISA § 502(a)(3)(B)(i), 29 U.S.C. § 1132(a)(3)(B)(i)]

72. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

73. Plaintiff contends that the Plan's SPD does not contain any language notifying a participant that there is a 180-day deadline to file suit following determination on external review and/or that any such limitations contained in the Plan were extended pursuant to the SPD's notice of temporary extension of deadlines and that Plaintiff's claim for benefits under section 502(a)(1)(B) is therefore timely. In the alternative, Plaintiff contends that Defendant Dane Street LLC breached fiduciary duties owed to Plaintiff, causing her to file her complaint after the 180-day deadline had expired, thereby causing her actual harm in the form of being unable to challenge the denial of her claim for reimbursement emergent air transport services in court.

74. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan.

75. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

76. ERISA's fiduciary duties include a duty of honesty and candor, which requires fiduciaries to communicate honestly, clearly, and accurately with participants and beneficiaries.

77. ERISA § 503(a)(3), 29 U.S.C. § 1132(a)(3) empowers this Court to grant appropriate equitable relief to redress any violations of ERISA or to enforce any provisions of ERISA.

78. Defendant Dane Street breached its fiduciary duties to Plaintiff by failing to provide clear and accurate information about the Plan's deadline for bringing a legal action in the final determination on external review that it provided to Ms. Mason following the conclusion of its review of her claim;

(2) failing to provide clear and accurate information on how Plaintiff could obtain information necessary to protect her legal right to bring a civil action challenging the claim denial.

79. Wherefore, Plaintiff prays for appropriate equitable relief, including but not limited equitable surcharge in the form of make-whole monetary relief to compensate her for her lost ability to bring a legal action against the Plan

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

A. Declare that Plaintiff is entitled to reimbursement of the air ambulance cost required to travel to the Mayo Clinic under the terms of the Plan;

B. Order Defendant Plan to reimburse Plaintiff's out of pocket expenses for emergent air transportation, with reasonable pre-judgment interest thereon;

C. In the alternative, award appropriate equitable relief from the Plan's 180-day limitation on the right to bring a civil action challenging a benefit claim denial;

D. In the alternative, award Plaintiff equitable surcharge compensating her for her lost right to bring a civil action against the Plan challenging the benefit claim denial;

E. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

F. Provide such other relief as the Court deems equitable and just.

Dated: May 26, 2023                                    BENHAM-BAKER LEGAL

                                                       By:  /s/
                                                            Hillary Benham-Baker
                                                            *Attorney for Plaintiff*

| | |
|---|---|
| Dated: May 26, 2023 | BOLT KEENLEY KIM LLP |
| | By: /s/ _____ |
| | James P. Keenley |
| | *Attorneys for Plaintiff* |